IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BUZZBALLZ, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-1115-RP |
| | § | |
| MPL BRANDS NV, INC. *d/b/a* | § | |
| PATCO BRANDS, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant MPL Brands NV, Inc. d/b/a Patco Brands's ("Patco") motion to transfer venue to the Northern District of California. (Dkt. 12). Plaintiff BuzzBallz, LLC ("BuzzBallz") filed a response in opposition, (Dkt. 15), and Patco filed a reply, (Dkt. 18). Patco also filed a notice of related matters, (Dkt. 31), and BuzzBallz filed a response to Patco's notice, (Dkt. 32). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion to transfer should be granted.[1]

**I. BACKGROUND**

BuzzBallz filed its complaint on September 15, 2023, in the Austin Division of the Western District of Texas ("WDTX"). (Compl., Dkt. 1). BuzzBallz alleges that Patco's Big Sipz product infringes BuzzBallz's trademark and trade dress rights and that Patco is unfairly competing with BuzzBallz. (*See* Am. Compl., Dkt. 10). BuzzBallz brings the following claims: (1) trademark infringement under the Lanham Act; (2) false designation of origin under the Lanham Act; (3) trademark dilution under the Lanham Act; (4) common law trademark infringement under Texas

---

[1] Patco has also filed a Rule 12(b)(6) motion to dismiss. (Dkt. 11). Because the Court finds that transfer is warranted in this case, the Court does not address Patco's motion to dismiss. *See GHJ Holdings, Inc. v. Suncast Corp.*, No. 5:11-CV-22, 2011 WL 13223646, at *2 (E.D. Tex. July 11, 2011) (finding that generally courts should resolve merits issues only after venue is settled).

1

law; (5) unfair competition by misappropriation under Texas law; and (6) trademark dilution under Texas law. (*See id.* at 23–30). In its original complaint, BuzzBallz also brought a claim for patent infringement, alleging infringement of U.S. Patent No. 11,738,904 (the "'904 Patent"). (*See* Compl., Dkt. 1, at 16–19, 27–28). However, BuzzBallz dropped its patent claim when it filed its amended complaint. (*See* Am. Compl., Dkt. 10).

BuzzBallz sells ready-to-drink alcoholic beverages. (*Id.* at 2). It is a limited liability company organized under the laws of Texas with its corporate headquarters and principal place of business in Carrollton, Texas—which is in the Dallas-Fort Worth area. (Resp., Dkt. 15, at 2). Although it was founded in and is based in Texas, BuzzBallz sells its products in all fifty U.S. states and internationally. (Am. Compl., Dkt. 10, at 2). BuzzBallz maintains its company documents and records at its offices in Carrollton. (Kick Decl., Dkt. 15-1, ¶ 4). BuzzBallz does not have any offices, production facilities, or warehouses in California, nor does it maintain any physical documents in California. (*Id.* ¶¶ 4, 9). BuzzBallz employs 529 employees in Texas—527 of whom live and work in the Dallas-Fort Worth area, one who lives in Sugarland, and one who lives in San Antonio. (*Id.* ¶ 6). All of BuzzBallz's executives work out of offices in Carrollton, Texas. (*Id.* ¶ 5). Conversely, BuzzBallz has only two employees in California—only one of whom resides in the Northern District of California ("NDCA"). (*Id.* ¶ 7). BuzzBallz asserts that its employee who works in NDCA would likely not be a witness in this case. (*Id.*).

Patco is also a manufacturer and distributor of alcoholic beverages. (Mot. Transfer, Dkt. 12, at 2). It is a corporation organized under the laws of Nevada with its corporate headquarters and principal place of business in Sausalito, California—which is located within NDCA. (*Id.*). Patco maintains its executive offices, research and development center, and design studio in Sausalito. (Elsberg Decl., Dkt. 12-1, ¶ 3). It also manages its operations and sales from this location and has continuously done so since March 2019. (*Id.*). Patco has twelve employees who work remotely in

Texas, five of whom reside in WDTX. (*Id.* ¶ 5). Patco asserts that it designed and developed Big Sipz in its Sausalito offices. (*Id.* ¶ 9). It states that it maintains key documents concerning the design, development, and sale of Big Sipz in Sausalito and that Patco employees and executives with knowledge of the design and development of the product reside near Patco's Sausalito offices. (*Id.*). Patco alleges that none of its WDTX employees had any substantial involvement in making decisions concerning Big Sipz's package design. (*Id.*).

Patco does not own or lease any office space, production facilities, or warehouses in WDTX. (*Id.* ¶ 4). In 2021, Patco contemplated, but never followed through with, the creation of an alternating proprietorship with Celis Brewery in Austin, Texas. (*Id.* ¶ 7). In anticipation of concluding this agreement with Celis, Patco registered to do business in Texas, listing Celis's address in Austin as its principal office residence in Texas. (*Id.* ¶ 8; *see also* Appl. Registration, Dkt. 15-2, at 5–6). But negotiations between Celis and Patco broke down and the two companies never entered into the proposed arrangement. (*Id.*). As such, Patco never leased or used Celis's premises as an office, nor did it produce or package Big Sipz at the Celis Brewery in Austin. (*Id.*). BuzzBallz, however, relied upon Patco's registration form when filing this case, believing that Patco did have a physical address in Austin. (*See* Resp., Dkt. 15, at 1–3; Am. Compl., Dkt. 10, at 1). BuzzBallz alleges that as of the date of its response brief, the Texas Secretary of State's website still listed Celis's Austin address as Patco's Texas address. (Pillifant Decl., Dkt. 15-2, ¶ 3; *see also* Ex. A, Dkt. 15-2, at 7). BuzzBallz also alleges that Patco has other Texas connections, such as hosting events promoting Big Sipz in Austin, selling Big Sipz products in WDTX, and registering its products and labels with the Texas Alcoholic Beverage Commission. (Resp., Dkt. 15, at 3). BuzzBallz further alleges that some of Patco's Texas consumers are individuals who are confused about the relationship between Big Sipz and BuzzBallz. (*Id.*)

3

On November 16, 2023, Patco filed a motion to transfer this case to NDCA. (Dkt. 12). It argues that this case has no connection to WDTX because the case involves a dispute between BuzzBallz—a Dallas-based company—and Patco—a California-based company. (*Id.* at 1). Because NDCA is the location where Patco maintains its principal place of business, Patco has key documents and witnesses, and Big Sipz was designed and developed, Patco argues that the Court should transfer the case to NDCA. (*Id.*). BuzzBallz opposes transfer, arguing that Patco has not met its burden in proving that NDCA is clearly a more convenient forum than WDTX. (Resp., Dkt. 15, at 4). Alternatively, BuzzBallz argues that if the Court does find that transfer is warranted, that the Court should instead transfer the case to the Northern District of Texas ("NDTX"), where BuzzBallz is based. (*Id.*).

## II. LEGAL STANDARD

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court turns to consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen I,* 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance;

and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative. *In Re Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). But when the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

### III. DISCUSSION

#### A. BuzzBallz's Request to Transfer to Northern District of Texas

The Court begins by briefly addressing BuzzBallz's request—embedded in its response to Patco's motion to transfer—that if the Court finds that transfer is warranted in this case, that it should transfer this case to NDTX, not NDCA. (Resp., Dkt. 15, at 10–11). BuzzBallz argues that it filed this case in WDTX based on Patco's infringing activities in Texas, as well as Patco's representation to the Texas Secretary of State that it maintains a principal place of business in

Austin. (*Id.*). BuzzBallz contends that transferring this case to NDCA would "punish BuzzBallz for this good-faith attempt to select the Texas venue with the closest connection to [Patco] rather than the venue where BuzzBallz is headquartered." (*Id.* at 10). As for its request to transfer the case to NDTX, BuzzBallz offers only a few sentences on why NDTX would be a proper venue for this case—namely, that BuzzBallz is based in that district, and as such, a "substantial number of witnesses are located in that district." (*Id.* at 11).

The Court finds that BuzzBallz's request to transfer to NDTX should be denied. Buzzballz has not properly moved to transfer the case to NDTX; BuzzBallz has filed its request in the last few pages of its response brief, rather than in a separate motion. The request thus violates this Court's local rules. *See* W.D. Tex. Loc. R. CV-5(a); W.D. Tex. Admin. Pol. & Proc. for Electronic Filing in Civil and Criminal Cases § 12(e) ("Each filing must consist of only one pleading. Multiple pleadings . . . must be filed as separate documents."). BuzzBallz also does not provide nearly enough information by which this Court could assess whether transfer to NDTX would be warranted under the Section 1404(a) factors. BuzzBallz could have filed this case in NDTX but instead chose to file it here. BuzzBallz also could have voluntarily dismissed its case in order to refile in NDTX once it learned that Patco did not maintain a physical presence in this district. Instead, it chose to maintain its suit in this district and raise a half-hearted request to transfer in its response brief. Accordingly, the Court denies Buzzballz's request to transfer to NDTX.

**B. Whether the Case Could Have Been Brought in the Northern District of California**

The Court now turns to whether transfer to NDCA is warranted. "The preliminary question under 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. In other words, a movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *2 (W.D. Tex. Aug. 26, 2022). In its

6

response, BuzzBallz does not dispute that venue would have been proper in NDCA. The Court finds that venue would have been proper in NDCA under 28 U.S.C. § 1391(b)(1) because Patco—the only defendant in this case—resides in NDCA. Further, Patco is subject to jurisdiction in California for the same reason. Therefore, the preliminary question is satisfied.

### C. Private Interest Factors

The Court next turns to the private interest factors relevant to the Section 1404(a) analysis. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The Court will address each factor in turn.

#### 1. Relative Ease of Access to Proof

"The first factor focuses on the location of 'documents and physical evidence relating to the [case].'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *Volswagen II*, 545 F.3d at 316). "The question is relative ease of access, not absolute ease of access." *Id.* (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (per curiam). "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *Id.* Patco argues that this factor favors transfer because Patco maintains its principal place of business in NDCA and thus, key documents concerning the design, development, and sale of Big Sipz are located there. (Mot. Transfer, Dkt. 12, at 5). In contrast, neither party maintains an office in WDTX; therefore, Patco contends that no key evidence is located in WDTX. (*Id.*). In response, BuzzBallz argues that "while neither party has its headquarters in [WDTX], the electronic nature of document storage makes these documents easily accessible in this district." (Resp., Dkt. 15, at 3).

The Court agrees with Patco. Neither party has offices in WDTX, and so, no evidence is located in this district. As for BuzzBallz's argument that the electronic nature of document storage

makes the location of this evidence less relevant, it is true that when "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]" this factor bears less strongly on the transfer analysis. *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). However, there are two important counter-considerations. First, "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* Here, Patco alleges that some physical evidence will be relevant to this case—such as physical packaging of the parties' respective products and "BuzzBallz point-of-sale signage." (Reply, Dkt. 18, at 4 (quoting Am. Compl., Dkt. 10, ¶ 21)). The record indicates that some of this physical evidence—the evidence related to Big Sipz—is in NDCA at Patco's headquarters. However, there is no indication that either party keeps any physical evidence in this district.

Second, even when the "vast majority" of evidence is electronic, the Court must still assess whether the evidence is relatively easier to access in the transferee forum. *See TikTok*, 85 F.4th at 359 (holding it was abuse of discretion to rely on speculation that Austin employees possessed or had access to relevant proof when it was "relatively easier to access . . . source code in [NDCA]—where a majority of the engineering team is based"). Here, the record indicates that Patco has only five employees who work remotely in WDTX, and there is no indication that these employees will have knowledge relevant to this lawsuit or have access to the relevant documents. As for BuzzBallz, the Court cannot consider whether BuzzBallz's records can be easily accessed from its headquarters in Carrolton, which is not in this district. *See id.* ("The district court erred by relying on the fact an employee with access to the relevant source code worked remotely from Irving, Texas."). Rather than "comparing Texas with California," the Court must "compar[e] the Western District of Texas with the Northern District of California." *Id.* In doing so, the Court notes that BuzzBallz has only one employee who works in WDTX and there is no evidence that this employee maintains or has access to BuzzBallz's relevant sources of proof.

Patco's evidence shows that access to at least some of the relevant sources of proof in this case is far easier in NDCA than in WDTX. This evidence outweighs BuzzBallz's speculation that the parties would have equal access to these sources of proof in WDTX. Accordingly, the Court finds that the first private interest factor weighs in favor of transfer.

### 2. Availability of Compulsory Process to Secure Attendance

"The second factor focuses on 'the availability of compulsory process to secure the attendance of witnesses.'" *TikTok*, 85 F.4th at 360 (quoting *Volkswagen II*, 545 F.3d at 315). "This factor favors transfer where 'non-party witnesses . . . are outside the [Western] District's subpoena power' and 'a proper venue that does enjoy absolute subpoena power for both depositions and trial' is available." *Id.* "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (internal quotation marks omitted). A court may subpoena a witness to attend trial only (1) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (2) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

Patco only briefly argues that this factor weighs in favor of transfer because NDCA "will be the home to key witnesses, such as those who were involved in the design and development of the accused packaging." (Mot. Transfer, Dkt. 12, at 5). However, Patco does not identify who these witnesses are and gives no indication that these witnesses do not work at Patco or otherwise would be unwilling to testify in this case. As for BuzzBallz, it argues that the second private interest factor weighs against transfer because third-party witnesses contemplated by BuzzBallz reside in Texas and could be subpoenaed to attend trial in this district. (Resp., Dkt. 15, at 7). These third-party witnesses are allegedly "Texas-based distributors and retailers who have worked with [Patco]" and "at least

9

three confused consumers identified in the [Amended Complaint who] reside in Texas." (*Id.*). But BuzzBallz has presented no evidence that any of these third-party witnesses "resides, is employed, or regularly transacts business in person" within a 100-mile radius from Austin. *See* Fed. R. Civ. P. 45(c). To the contrary, BuzzBallz's evidence indicates that the three confused consumers identified in the complaint—TikTok users who were allegedly confused about the relationship between Big Sipz and BuzzBallz—reside in Houston and Dallas. (*See* Am. Compl., Dkt. 10, ¶¶ 25, 27, 29; Pillifant Decl., Dkt. 15-2, ¶¶ 7–8). BuzzBallz also does not identify Patco's "distributors and retailers" with specificity or explain why Patco's distributors and retailers in NDCA would not be equivalent witnesses. Further, BuzzBallz has not presented evidence that any of these Texas-based witnesses would be unwilling to testify at trial.

The Court finds that neither party has identified any third-party witnesses subject to compulsory process in WDTX or NDCA. Accordingly, this second factor is neutral.

### 3. Cost of Attendance

The third factor focuses on "the cost of attendance for willing witnesses." *Volkswagen II*, 545 F.3d at 315. The Fifth Circuit employs a "100-mile rule" which states that when "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Both parties agree that transfer to NDCA would be more convenient for Patco because its headquarters is located there, whereas the distance from its headquarters to WDTX's Austin courthouse is 1,753 miles. (Mot. Transfer, Dkt. 12, at 6; *see also* Resp., Dkt. 15, at 8). Accordingly, the cost of attendance for employees at Patco's headquarters will be significantly lower if this case is transferred to NDCA.

BuzzBallz, which is located in the Dallas-Fort Worth area, argues that while transfer to NDCA would be more convenient for Patco, transfer would "substantially inconvenience

BuzzBallz, since it is significantly more inconvenient for BuzzBallz employees to travel to San Francisco than Austin." (Resp., Dkt. 15, at 8). BuzzBallz argues that transferring the case will simply "shift[] convenience from one party to another." (*Id.*). The Court disagrees. If this motion were a choice between NDTX and NDCA, then BuzzBallz may be correct that transferring venue from the district of one party's headquarters to the other would not necessarily reduce the overall cost of attendance. However, that is not the choice presented here. BuzzBallz already decided not to file this case in NDTX but instead to file its case in a venue that is more than two hundred miles from its headquarters and in which it lacks a meaningful presence. If this case remained in WDTX, then both parties' witnesses would be required to travel away from their homes and offices to stay in hotels during the trial. However, if this case is transferred to NDCA, then only one party's witnesses will be required to travel for trial. Thus, the cost of attendance for willing witnesses would on balance be lower if this case is transferred to NDCA. *See Choice Hotels Int'l, Inc. v. Patel*, 2012 WL 12894822, at *2 (S.D. Tex. June 1, 2012) (transferring case from Houston to Victoria, Texas where neither party resided in Houston and if the Court maintained venue in Houston, "parties and witnesses from either side would be forced to travel").

Further, courts have observed that "intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791–92 (S.D. Tex. 2005) (collecting cases). Applying that principle here, this case will primarily focus on Patco's alleged infringement of BuzzBallz's trademark and trade dress rights. The development, design, marketing, and sales of Big Sipz occurred at Patco's headquarters in NDCA. And there is no indication that either party's remote employees who reside in WDTX will be relevant witnesses in

this case. Accordingly, the Court finds that the third private interest factor weighs in favor of transfer.

### 4. Other Practical Problems

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. BuzzBallz argues that this factor weighs against transfer because both parties have employed counsel in Texas. (Resp., Dkt. 15, at 8). However, the Fifth Circuit has held that the location of counsel is "irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *see also Volkswagen I*, 371 F.3d at 206. BuzzBallz also argues that "there are no practical advantages of transferring this case to a new venue and starting from scratch." (Resp., Dkt. 15, at 8). But this case is still at its infancy in this Court, too: The Court has yet to rule on Patco's motion to dismiss, and a scheduling order was only recently entered in March 2024, (*see* Dkt. 30). Transferring this case would not affect the progression of this litigation.

Conversely, this Court has considered delays in requesting transfer or related litigation in the transferee or transferor court when analyzing this factor. *See, e.g., Umbra Techs. Ltd. v. VMware, Inc.*, No. 1:23-CV-904-DII, 2024 WL 1123592, at *5 (W.D. Tex. Mar. 13, 2024). Patco filed a notice of related matters, (Dkt. 31), in which it asserts that following BuzzBallz's amendment in this case in which it dropped its patent infringement claim from its amended complaint, Patco filed a declaratory judgment action in NDCA seeking a declaratory judgment that it does not infringe the '904 Patent. *See MPL Brands NV, Inc. v. BuzzBallz, Inc.*, No. 3:24-cv-1282 (N.D. Cal.) (filed March 1, 2024). In a response to the notice of related matters, BuzzBallz argues that the California action should have no bearing on this motion to transfer because the California action was filed after this case was filed and involves a patent claim, whereas this case only pertains to trademark claims. (Resp. Not., Dkt. 32). The Court agrees with BuzzBallz. Given that the California action was filed after the motion to

transfer was briefed in this case and pertains to a distinct legal claim, the Court does not find that it has an impact on this Court's decision on the motion to transfer. Accordingly, the Court finds that the fourth private interest factor is neutral.

### D. Public Interest Factors

The Court next turns to the public interest factors relevant to the Section 1404(a) analysis. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Volkswagen I*, 371 F.3d at 203. The Court will address each factor in turn.

#### 1. Administrative Difficulties Flowing from Court Congestion

The first public interest factor considers "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. This factor normally weighs against transfer when the "case appears to be timely proceeding to trial before the" transferee district. *Planned Parenthood*, 52 F.4th at 631. The median time to trial is twenty months faster in WDTX than NDCA.[2] While WDTX may be faster than NDCA as a whole, the Austin Division of this district has a particularly heavy civil caseload. The undersigned has over 900 active civil cases and is the only active judge in Austin. Because WDTX's faster trial time is somewhat offset by the undersigned's particularly heavy civil caseload, the first public interest factor only slightly weighs against transfer.

#### 2. Local Interest

Under this factor, courts evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 315. "We look not to the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave

---

[2] *See* United States District Courts — National Judicial Caseload Profile, Federal Court Management Statistics, December 2023, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf.

13

rise to a suit." *TikTok*, 85 F.4th 352, 364 (internal quotation marks omitted). "Indeed, the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* Accordingly, "this factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Volkswagen II*, 545 F.3d at 317–18. This factor can also weigh against transfer when the "citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district]." *Planned Parenthood*, 52 F.4th at 632.

The Court finds that this factor weighs in favor of transfer. Although BuzzBallz is a resident of Texas, WDTX is neither party's home. This district has no special connection to this case, which is a dispute between a Dallas-based company and a California-based company. The alleged injury in this case is not limited to this district. Both parties sell their products nationwide, and BuzzBallz has alleged that Patco's allegedly infringing acts are occurring online and on a "large scale at stores throughout the country." (*See* Am. Compl., Dkt. 10, ¶¶ 8, 19, 23, 38). No key facts or events, such as the design of the accused product, occurred in this district. *See PuraPharm Intern. (H.K.) Ltd. v. PurePharma, Inc.*, 2015 WL 1808582, at *4 (S.D. Tex. Apr. 20, 2015) (granting transfer where "Texas has not been shown to have any greater localized interest in this trademark dispute than any other state where Defendants sell their products"). In contrast, all of Patco's decisions relevant to this suit emanate from its home offices in NDCA. Further, NDCA has a local interest in adjudicating the allegedly wrongful conduct of companies that operate their headquarters within its boundaries. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319–20 (Fed. Cir. 2021). Accordingly, the Court finds that the second public interest factor weighs in favor of transfer.

### 3. Familiarity with the Law

Under the third public interest factor, courts consider the current district's "familiarity with the law that will govern the case." *Volkswagen II*, 545 F.3d at 315. This factor most "commonly applies where the destination venue is in a different State—in which case that State's familiarity with

the applicable law would be especially probative to the transfer analysis." *Planned Parenthood*, 52 F.4th at 632 n.5. "This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" *TikTok*, 85 F.4th at 365 (quoting *Radmax*, 720 F.3d at 289). Courts "recognize that '[f]ederal judges routinely apply the law of a State other than the State in which they sit'" and have hesitated to find that this factor weighs in favor of transfer when there are no 'exceptionally arcane features of Texas . . . law that are likely to defy comprehension by a federal judge sitting in [California].'" *Id.* (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 436 (5th Cir. 2022)).

Here, BuzzBallz's claims arise under both federal and Texas law. The primary claims arise under the Lanham Act. BuzzBallz's common law trademark infringement and unfair competition claims present no complication because "the elements of both common law trademark infringement and unfair competition claims under Texas law are the same as those under federal trademark law." *Heritage All. v. Am. Policy Roundtable*, 2019 WL 3305609, at *5 (W.D. Tex. July 23, 2019). Similarly, Texas trademark dilution claims heavily rely on federal law, with the exception being that the relevant geographic region of the analysis is Texas as opposed to the United States as a whole. Tex. Bus. & Com. Code § 16.103(b); *see also Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1172 (S.D. Tex. 2016) (noting how the Texas Anti-Dilution statute was recodified to redefine the requisite claim required for a dilution claim and to "make the Texas dilution standard substantially consistent' with federal law"). BuzzBallz also brings common law claims for misappropriation and "passing off." Although these claims do not necessarily have a federal analogue, the Court also finds that these claims do not contain "exceptionally arcane features of Texas . . . law that are likely to defy comprehension by a federal judge sitting in [California]." *TikTok*, 85 F.4th at 365. Because the Court finds that both NDCA and WDTX would be equally capable of applying the relevant law in this case, the Court finds that the third public interest factor is neutral.

4. Avoidance of Unnecessary Problems of Conflict of Laws

The fourth public interest factor focuses on "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315. The parties agree that this factor is neutral because foreign law does not apply in this case.

### E. Conclusion

For the reasons discussed above, the factors clearly weigh in favor of transfer. Three factors—the ease of access to proof, cost of attendance, and local interests—weigh in favor of transfer. Four factors—availability of compulsory process, miscellaneous practical problems, familiarity of law, and conflict of laws—are neutral. And only one factor—court congestion—slightly weighs in favor of keeping the case in the Western District of Texas. Therefore, because venue is clearly more convenient in the Northern District of California, the Court will grant Patco's motion to transfer.

### IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Patco's motion to transfer, (Dkt. 12), is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **TRANSFERRED** to the Northern District of California.

**SIGNED** on July 2, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE