UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUZZBALLZ, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MPL BRANDS NV, INC.,<br><br>　　　　Defendant. | Case No. 24-cv-04004-EKL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS**<br><br>Re: Dkt. No. 110 |

BuzzBallz, LLC ("BuzzBallz") moves to dismiss all counterclaims asserted in this case by MPL Brands NV, Inc. d/b/a Patco ("Patco"). The Court carefully reviewed the parties' briefs and heard argument on June 11, 2025. For the reasons discussed below, the motion is GRANTED without leave to amend as to Counterclaims 1 and 3 (Declaratory Judgment of Patent Invalidity and Inequitable Conduct); GRANTED with leave to amend as to Counterclaim 4 (*Walker Process* Fraud and Attempted Monopolization); and DENIED as to Counterclaim 2 (Unfair Competition Law) and Counterclaim 5 (Cybersquatting).

I.　**BACKGROUND**

This is an intellectual property dispute between two rival manufacturers of ready-to-drink cocktail products. On September 15, 2023, BuzzBallz initiated this action against Patco in the Western District of Texas. Second Am. Countercls. ¶ 7, ECF No. 106 ("Counterclaim"). BuzzBallz claimed that Patco infringed its trademarks, trade dress, and its U.S. Patent No. 11,738,904 ('904 Patent). *Id.* On November 2, 2023, BuzzBallz voluntarily withdrew its claim for infringement of the '904 Patent. *Id.*; *see also* First Am. Compl., ECF No. 10. The case was later transferred to the Northern District of California and was ultimately reassigned to this Court. ECF Nos. 36, 74. On January 6, 2025, BuzzBallz filed its operative second amended

1  complaint asserting claims against Patco for unfair competition, trademark and trade dress
2  infringement and dilution under the Lanham Act, and trademark and trade dress infringement and
3  dilution under California law.  ECF No. 90.
4      Patco denies liability and asserts that this lawsuit is part of a broader anticompetitive
5  campaign to drive Patco out of business.  Patco claims that BuzzBallz obtained the '904 Patent by
6  defrauding the U.S. Patent and Trademark Office, then frivolously asserted that patent against
7  Patco in this case.  Patco also complains that BuzzBallz engaged in other coordinated litigation;
8  sent cease-and-desist letters to Patco's business partners; and cybersquatted on two website
9  domain names to redirect Patco's customers to BuzzBallz's own website.  Based on these
10 allegations, Patco asserts five counterclaims:  (1) Declaratory judgment of invalidity as to the '904
11 Patent; (2) Unfair competition under California Business and Professions Code § 17200 ("UCL");
12 (3) Declaratory judgment of inequitable conduct during prosecution of the '904 Patent; (4) *Walker*
13 *Process* fraud and attempted monopolization under 15 U.S.C. §§ 2, 15, and 26; and
14 (5) Cybersquatting under 15 U.S.C. § 1125(d) ("ACPA").  Counterclaim ¶¶ 2-6, 70-171.
15     BuzzBallz moves to dismiss all five counterclaims.  BuzzBallz contends that the Court
16 lacks subject matter jurisdiction over Counterclaims 1 and 3 because BuzzBallz has executed a
17 broad covenant not to sue on the '904 Patent.  As to Counterclaims 2, 4, and 5, BuzzBallz
18 contends that Patco fails to state a claim.[1]  The Court addresses these in turn.

## II. RULE 12(B)(1) MOTION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss claims for which the court lacks subject matter jurisdiction.  "[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."

---

[1] BuzzBallz also argues that the Court should, in its discretion, dismiss the counterclaims because they unduly complicate the litigation. Mot. at 22; *see also* 6 Wright & Miller's Fed. Prac. & Proc. § 1420 (3d ed. 2025) (noting that courts may refuse to entertain permissive counterclaims when allowing them "would unduly complicate the litigation"). The Court agrees that the declaratory judgment counterclaims would unduly complicate this case. But as discussed below, these counterclaims are dismissed for lack of subject matter jurisdiction. The Court declines to dismiss the remaining counterclaims on the basis that they would unduly complicate the litigation.

*California v. Texas*, 593 U.S. 659, 672 (2021). A justiciable case or controversy exists for purpose of declaratory relief if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Additionally, the party seeking relief must plausibly allege that, in the absence of declaratory relief, it will suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

**B.     Discussion**

In its initial complaint filed September 15, 2023, BuzzBallz claimed that Patco infringed the '904 Patent. *See* Counterclaim ¶ 7. In response, Patco promptly sent BuzzBallz a letter arguing that the infringement claim was "frivolous," and that the '904 Patent was invalid. *Id*. On November 2, 2023, BuzzBallz voluntarily withdrew its infringement claim as to the '904 Patent. *Id*. ¶ 8. Since then, BuzzBallz has never reasserted the '904 Patent against Patco. To the contrary, BuzzBallz executed a broad covenant not to sue Patco for infringing the '904 Patent. Despite this covenant, Patco still seeks a declaratory judgment that the '904 Patent is invalid (Counterclaim 1) and unenforceable due to inequitable conduct (Counterclaim 3). *Id*. ¶¶ 3, 17, 70-74, 117-37.

BuzzBallz moves to dismiss both counterclaims for lack of subject matter jurisdiction. BuzzBallz contends that the counterclaims are moot because the covenant not to sue terminated any case or controversy between the parties as to patent validity and enforceability. Patco concedes that Counterclaim 1 may be dismissed as moot. *See* Opp. at 3, ECF No. 116 ("Opp."). However, Patco argues that the Court retains jurisdiction over Counterclaim 3 because BuzzBallz's alleged inequitable conduct is also relevant to Patco's request for attorneys' fees pursuant to 35 U.S.C. § 285. For the following reasons, the Court concludes that Patco's declaratory judgment counterclaims are moot, and they are not revived by Patco's request for attorneys' fees. Alternatively, even if these counterclaims are not moot, the Court declines to

3

1  exercise jurisdiction over them because doing so would not promote the objectives of the
2  Declaratory Judgment Act. Thus, the Court dismisses these counterclaims without prejudice for
3  lack of subject matter jurisdiction, and without leave to amend in this action.

### 1. Mootness

The Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)). A case becomes "moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id*. at 91 (quoting *Alvarez*, 558 U.S. at 93); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160-61 (2016) ("If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013))).

A covenant not to sue may moot a claim for declaratory relief if it is broad enough to make it "absolutely clear that the allegedly unlawful activity cannot reasonably be expected to recur." 568 U.S. at 94-95 (citation modified). For example, in *Already*, the Supreme Court held that "a covenant not to enforce a trademark against a competitor's existing products and any future 'colorable imitations' moots the competitor's action to have the trademark declared invalid." *Id*. at 88. The Supreme Court held that the "breadth of this covenant" made it "absolutely clear" that the trademark owner "cannot reasonably be expected" to enforce the trademark in the future. *Id*. at 93-95. The covenant was "unconditional and irrevocable"; it protected the competitor and its "distributors and customers"; and it covered "not just current or previous designs, but any colorable imitations." *Id*. at 93. Thus, the covenant mooted the defendant's counterclaim for a declaratory judgment that the trademark was invalid.

The Federal Circuit has also held that voluntary dismissal and a covenant not to sue can moot claims for declaratory judgment of patent invalidity and unenforceability. *See, e.g.*, *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007). In *Benitec*, the patent holder sued the defendant for infringement, and the defendant asserted "declaratory relief

4

counterclaims of invalidity and unenforceability based upon alleged inventorship fraud." *Id*. at 1342. More than a year after filing suit, the patent holder moved to dismiss its own infringement claim without prejudice because intervening case law indicated that there was "no presently viable infringement claim." *Id*. at 1343. The district court granted the motion and dismissed the defendant's declaratory relief counterclaims for lack of jurisdiction. *Id*. During the appellate proceedings, the patent holder also made a covenant not to sue the defendant for infringement of the patent at issue. *Id*. The Federal Circuit affirmed dismissal of the counterclaims because "there [was] no controversy between the parties concerning infringement" due to the patent holder's voluntary dismissal and covenant not to sue. *Id*. at 1348.

Here, Patco's declaratory judgment counterclaims are moot for the same reasons. The scope of BuzzBallz's covenant not to sue is remarkably broad.[2] BuzzBallz covenants not to assert the '904 Patent with respect to the "manufacture, use, import, offer for sale, sale, or other disposition" of *any* Patco product. Covenant § 2.1. The covered products are defined broadly to mean "all past, present, or future products" – not just products that are similar to the ones Patco currently sells. *Id.* § 1.4. The covenant protects not only Patco, but also "any manufacturer, supplier, distributor, and direct or indirect customer" of Patco. *Id.* § 1.3. BuzzBallz's covenant thus offers Patco even greater protection than the covenants that were sufficient to moot the declaratory judgment counterclaims in *Already* and *Benitec*.[3]

Patco does not argue that the covenant has any gaps that would expose Patco or its business partners to future litigation on the '904 Patent. To the contrary, Patco agrees that its counterclaim for declaratory judgment of invalidity is moot and Patco does not oppose dismissal without prejudice of that counterclaim. Opp. at 3-4 ("In light of that covenant not to sue, Patco

---

[2] *See* Bloom Decl. Ex. 6, ECF No. 112-5 ("Covenant"). Patco does not oppose the Court taking judicial notice of this document for purposes of the motion to dismiss. *See* Patco's Statement of Non-Opp., ECF No. 117 ("Patco does not oppose the Court taking judicial notice of those documents for the purposes of the Motion to Dismiss only.").

[3] For example, the covenant in *Already* did not extend to all possible products made by the defendant, but only to "colorable imitations" of then-existing products. *Already*, 568 U.S. at 88. The covenant in *Benitec* protected against infringement for past actions only; it did not cover potential future infringement. *Benitec*, 495 F.3d at 1343 (covering "activities and/or products occurring on or before the date dismissal was entered" by the district court).

5

1    agrees that there is no longer a case or controversy between the parties concerning the validity of
2    the '904 Patent."). The covenant makes it "absolutely clear" that BuzzBallz will not enforce the
3    '904 Patent against Patco or any of its business partners or affiliates. *Already*, 568 U.S. at 94-95.
4    Accordingly, there is no controversy between the parties as to the validity or enforceability of the
5    '904 Patent. Patco's declaratory judgment counterclaims must be dismissed as moot.

### 2.    Section 285 fees

Patco argues that BuzzBallz's alleged inequitable conduct is still a live issue in this case because Patco seeks attorneys' fees under 35 U.S.C. § 285. *See* Opp. at 6-7. Section 285 provides that, in "exceptional" cases involving patent or trademark infringement, the court "may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "Exceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001). Patco's argument has two parts. First, Patco claims that its Section 285 fee request creates subject matter jurisdiction for its declaratory judgment counterclaim. Second, Patco argues that, even if the declaratory judgment counterclaim is technically moot, the Court may declare the '904 Patent unenforceable for inequitable conduct as part of the Section 285 fee inquiry. Neither argument is persuasive here.

First, Patco did not cite, and the Court could not locate, any Federal Circuit case holding that a request for Section 285 fees provides an independent basis for a court's "jurisdiction over a cause of action to declare the patent unenforceable." Opp. at 5-6 (recognizing a split of authority among district courts on this question). Patco's position is inconsistent with the general principle that a claim for attorneys' fees "does not resuscitate an otherwise moot controversy." *Berry v. Air Force Central Welfare Fund*, 115 F.4th 948, 952 (9th Cir. 2024) (quoting *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996)). As discussed above, BuzzBallz's voluntary withdrawal of its infringement claim and its broad covenant not to sue moots Patco's declaratory judgment counterclaims. Patco's Section 285 fee request does not resuscitate its otherwise moot declaratory judgment counterclaims.

1    Second, Patco argues that the Court may deem the '904 Patent unenforceable even if the
2  Court lacks jurisdiction to provide declaratory relief. Patco argues that it is entitled to Section 285
3  fees because BuzzBallz engaged in inequitable conduct by defrauding the Patent Office. A
4  finding of inequitable conduct for purposes of Section 285 fees can also render the '904 Patent
5  unenforceable because "the unenforceability of a patent follows automatically once a patent is
6  found to have been obtained via inequitable conduct." *Monsanto Co. v. Bayer Bioscience N.V.*,
7  514 F.3d 1229, 1243 (Fed. Cir. 2008) (holding that a court may deem a patent to be
8  "unenforceable" as part of determining whether a case is "exceptional").
9    However, Section 285 fees are available only to the "prevailing party," and Patco is not the
10 prevailing party as to the '904 Patent infringement claim. Prevailing party status requires a
11 judicially-sanctioned change in the legal relationship of the parties. *Highway Equip. Co. v. FECO
12 Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006). Here, even if there has been a change in the legal
13 relationship of the parties, the change was not judicially sanctioned.[4] BuzzBallz did not dismiss
14 the '904 Patent infringement claim; instead, it voluntarily withdrew the claim by amending the
15 complaint as of right, without leave of court. *See* Fed. R. Civ. P. 15(a)(1). And BuzzBallz did not
16 seek or obtain any "judicial imprimatur" to give effect to its covenant not to sue.[5] *RFR Indus., Inc.
17 v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007) (requiring "sufficient judicial
18 imprimatur to constitute a 'judicially sanctioned change in the legal relationship of the parties'"
19 (quoting *Highway Equip.*, 469 F.3d at 1032)).
20   In sum, Patco cannot establish that it is a prevailing party as to the '904 Patent
21 infringement claim. The Court will have no occasion to address whether Patco is entitled to

---

[4] Standing alone, BuzzBallz's voluntary withdrawal of its infringement claim would not establish a change in the legal relationship of the parties because BuzzBallz could reassert the '904 Patent in the future. *See Giesecke & Devrient GmbH v. United States*, No. 2022-2002, 2024 WL 3171658, at *3 (Fed. Cir. June 26, 2024) (holding that defendant was not a prevailing party where plaintiff withdrew claims prior to an adjudication on the merits); *see also O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 992 (Fed. Cir. 2020) (holding that defendant was not a prevailing party because plaintiff voluntarily dismissed without prejudice). The Court assumes without deciding that the covenant not to sue changes the legal relationship of the parties because it bars BuzzBallz from asserting that Patco infringes the '904 Patent.

[5] For example, BuzzBallz did not file the covenant with the court "to end the litigation, resulting in a dismissal with prejudice." *Highway Equip.*, 469 F.3d at 1036.

7

1  Section 285 fees as to that claim, thus the Court need not consider whether BuzzBallz engaged in inequitable conduct.[6]

### 3. The Court's discretion

For the reasons discussed above, there is no actual controversy between the parties with respect to the '904 Patent, thus the Court has no jurisdiction (and no discretion) to issue declaratory relief. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008). However, even if the Court had jurisdiction, the Court may decline to exercise it because "the Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so." *MedImmune*, 549 U.S. at 136 (quoting 28 U.S.C. § 2201(a)). The Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In exercising this discretion, courts consider "whether resolving the case serves the objectives for which the Declaratory Judgment Act was created." *Cat Tech*, 528 F.3d at 883. These objectives include "clarifying and settling the legal relations in issue," and affording relief from "uncertainty, insecurity, and controversy[.]" *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1357 (Fed. Cir. 2004) (quoting Edwin Borchard, *Declaratory Judgments* 299 (2d ed. 1941)).

In this case, maintaining jurisdiction over the declaratory judgment counterclaims would not promote the objectives of the Declaratory Judgment Act. BuzzBallz asserted the '904 Patent for less than two months before voluntarily withdrawing it from the case twenty months ago. BuzzBallz's subsequent covenant not to sue has clarified and settled the legal relations between the parties as to the '904 Patent. There is no uncertainty, insecurity, or controversy for this Court to resolve.

The Court also notes that Patco can continue to seek invalidation of the '904 Patent in the parallel *inter partes* review proceedings before the Patent Trial and Appeal Board – which has already instituted review.[7] In light of these parallel proceedings, exercising jurisdiction over the

---

[6] To be clear, the Court does not reach whether Patco could establish prevailing party status as to the trademark claims that remain in this case.

[7] Patco's petition for *inter partes* review of the '904 Patent is expressly incorporated by reference

8

1   declaratory judgment counterclaim for inequitable conduct would be duplicative and wasteful of

2   judicial and party resources.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276,

3   1288 (Fed. Cir. 2011) (en banc) (recognizing that inequitable conduct disputes increase the

4   complexity, duration, and cost of litigation).  Accordingly, the declaratory judgment counterclaims

5   are dismissed without leave to amend.

## III.   RULE 12(B)(6) MOTION

### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

### B.   *Walker Process* Fraud and Attempted Monopolization (Counterclaim 4)

Patco's fourth counterclaim alleges attempted monopolization under § 2 of the Sherman Act.  Patco alleges that BuzzBallz engaged in two types of anticompetitive conduct.  First, Patco claims that BuzzBallz engaged in "*Walker Process* fraud," so named after the Supreme Court decision that recognized "the enforcement of a patent procured by fraud on the Patent Office may

---

in the Counterclaim.  Counterclaim ¶ 72 ("Patco incorporates by reference Patco's petition for *inter partes* review of the '904 Patent, filed in IPR2024-01098[.]").  The Court may also take judicial notice of procedural developments before the PTAB, including the PTAB's decision to institute review.  *See Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1049 (N.D. Cal. 2024); *see also Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1088 n.8 (N.D. Cal. 2016).

9

be violative of § 2 of the Sherman Act[.]" *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965). Patco claims that BuzzBallz defrauded the Patent Office to obtain the '904 Patent, then enforced the '904 Patent through litigation. Counterclaim ¶¶ 139, 144. Second, Patco claims that BuzzBallz coordinated other litigation against Patco – unrelated to the '904 Patent – and sent cease-and-desist letters to Patco's business partners.

Patco's counterclaim for attempted monopolization requires: (1) "predatory or anticompetitive conduct," (2) "a specific intent to monopolize," (3) "a dangerous probability of achieving monopoly power," and (4) causal antitrust injury. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). "[D]emonstrating the dangerous probability of monopolization in an attempt case also requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Id*. at 459; *see also Walker Process*, 382 U.S. at 177 ("Without a definition of that market there is no way to measure [defendant's] ability to lessen or destroy competition.").

Here, the attempted monopolization counterclaim fails because Patco does not plausibly allege a relevant market nor that BuzzBallz has a dangerous probability of achieving monopoly power. Each of these deficiencies is independently dispositive.[8] To provide guidance for Patco if it chooses to amend this counterclaim, the Court also addresses Patco's second theory of anticompetitive conduct based on coordinated litigation and cease-and-desist letters. As currently alleged, this conduct is not actionable because it is shielded from liability under *Noerr-Pennington* immunity.

### 1. Relevant market

"The relevant market is the field in which meaningful competition is said to exist." *Image Tech. Servs., Inc. v. Eastman Kodak Co*., 125 F.3d 1195, 1202 (9th Cir. 1997). It includes two components: a relevant geographic market and a relevant product market. *Hicks v. PGA Tour,*

---

[8] Thus, the Court need not address whether Patco's first theory based on *Walker Process* fraud is plausibly alleged. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998) (explaining the elements of fraud on the Patent Office required for an antitrust counterclaim); *see also In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 314 (N.D. Cal. 2007) (citing *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-71 (Fed. Cir. 1998)).

*Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). The relevant product market must include "the product at issue as well as all economic substitutes for the product." *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). Although Patco "need not plead a relevant market with specificity, . . . a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Hicks*, 897 F.3d at 1120 (quoting *Newcal*, 513 F.3d at 1045).

Here, Patco does not plausibly allege either component of a relevant market. First, Patco does not allege *any* geographic market. This alone is sufficient grounds for dismissal. *See Hicks*, 897 F.3d at 1120; *see also Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc.*, No. 14-cv-05239-VC, 2015 WL 3766754, at *2 (N.D. Cal. June 16, 2015).

Second, the alleged product market is facially unsustainable. According to the complaint, the product market is the "small-format ready-to-drink ['RTD'] cocktail market," Counterclaim ¶¶ 11, 62-63, 67-68, 163-64, which includes only cocktails that are "250 mL or less," *id.* ¶ 21. Patco's only support is that the "ready-to-drink cocktail market has been publicly recognized within the alcoholic beverage industry." *Id.* ¶ 68. Even if industry recognition were sufficient, Patco does not allege that the industry recognizes Patco's proposed market – that is, a market for *small-format* ready-to-drink cocktails of 250 mL or less. The article that Patco cites for industry recognition does not distinguish "small format" from other ready-to-drink cocktails. *See* Chuck Ulie, *Sales of Ready-to-Drink Cocktails Surge, Data Shows*, CSP (June 6, 2023), https://www.cspdailynews.com/beverages/sales-ready-drink-cocktails-surge-data-shows [https://perma.cc/5KPY-S2Y4] (the "RTD Article"). To the contrary, the article lists two "375 mL" cocktails in the same "RTD category" that includes BuzzBallz. *Id.* Patco does not explain why, for example, the BuzzBallz and Big Sipz 200 mL margarita cocktails compete in the same market, but a Hornitos Tequila 375 mL margarita cocktail is excluded from that market. *See id.* Thus, Patco's proposed product market is facially unsustainable because it fails to include all reasonable economic substitutes.[9]

---

[9] There are other issues with the proposed product market that Patco must address if it chooses to amend this counterclaim. For example, it is doubtful that Patco's citation to one article

11

### 2. Dangerous probability of achieving monopoly power

Patco also fails to plausibly allege that BuzzBallz has a dangerous probability of achieving monopoly power in the relevant market. Monopoly power is "the ability to raise price profitably *by restricting output*." *Ohio v. Am. Express Co.*, 585 U.S. 529, 549 (2018) (quoting Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles & Their Application ¶ 501). Monopoly power may be demonstrated through direct or indirect evidence. *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460-61 (1986). Direct evidence of monopoly power requires allegations of "restricted output and supracompetitive prices." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). Indirect evidence of monopoly power requires allegations that: (1) the defendant has a high share of the relevant market; (2) "new competitors face high market barriers to entry"; and (3) "current competitors lack the ability to expand their output to challenge [the] monopolist's high prices." *Image Tech. Servs.*, 125 F.3d at 1207-08; *see also Rebel Oil Co. v. Atl. Richfield Co*., 51 F.3d 1421, 1438 (9th Cir. 1995) (applying these requirements to a claim for attempted monopolization).

Here, Patco alleges that "BuzzBallz's dominance in the small-format ready-to-drink cocktail market shows that BuzzBallz is dangerously close to achieving monopoly power." Counterclaim ¶ 67; *see also id*. (alleging that BuzzBallz "outperform[s] other . . . brands in sales and growth"). But bare assertions that a defendant is "dominant" in the market are insufficient to plausibly allege a dangerous probability of achieving monopoly power. *Rebel Oil*, 51 F.3d at 1441-42. Patco must allege barriers to entry and expansion, which Patco never addresses in its counterclaim. Moreover, the same article cited by Patco to support its market definition identifies at least 20 brands in the ready-to-drink category, including well-known alcohol brands like Bulleit,

---

referencing a ready-to-drink "category" plausibly alleges industry recognition of a ready-to-drink relevant market for purposes of antitrust law. Moreover, Patco does not allege why ready-to-drink cocktails are in a separate product market from other ready-to-drink alcoholic beverages such as hard seltzers. On this point, the article cited by Patco states that the ready-to-drink category ranges "from full-strength cocktails to lower-ABV options that can compete with hard seltzers." *See* RTD Article. This suggests that Patco defined the relevant market too narrowly by arbitrarily excluding products like hard seltzers that consumers may view as reasonable substitutes.

1  Campari, Casa Azul, and CIROC. The article discusses the emergence of an "increased number

2  and variety of RTD options" which has "fueled the category's growth" and "inspired even more

3  brands to launch RTD products." *See* RTD Article. These statements do not describe a market

4  guarded by barriers to entry or expansion, let alone a market that is dangerously close to becoming

5  a monopoly.

6  Accordingly, Patco's attempted monopolization claim also fails for lack of a dangerous

7  probability that BuzzBallz will achieve monopoly power.

### 3.     Other allegations of anticompetitive conduct

9  Although Patco primarily bases its attempted monopolization claim on *Walker Process*

10 fraud related to the '904 Patent, Patco also alleges that BuzzBallz engaged in other anticompetitive

11 conduct unrelated to the '904 Patent. *See* Counterclaim ¶ 155. Patco alleges that BuzzBallz has

12 coordinated litigation against Patco and sent cease-and-desist letters to Patco's manufacturing and

13 distribution partners. *See id*. ¶¶ 18, 155-57. This theory of anticompetitive conduct fails because

14 BuzzBallz's litigation activity is protected by *Noerr-Pennington* immunity.[10]

15 Under the doctrine of *Noerr-Pennington* immunity, litigation activity is immune from

16 antitrust liability unless it is "objectively baseless in the sense that no reasonable litigant could

17 realistically expect success on the merits." *Prof'l Real Est. Inv., Inc. v. Columbia Pictures, Inc.*,

18 508 U.S. 49, 60 (1993) ("*PRE*"). *Noerr-Pennington* immunity protects coordinated litigation

19 activity, too. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972); *see*

20 *also Primetime 24 Joint Venture v. Nat'l Broadcasting Co.*, 219 F.3d 92, 99-100 (2d Cir. 2000)

21 (recognizing that *Noerr-Pennington* immunity extends to "concerted litigation" and "concerted

22 efforts incident to litigation" so long as such efforts are not objectively baseless). Here, Patco's

23 allegations of "coordinate[d] litigation" cannot support a claim for attempted monopolization

24 because Patco does not allege that the litigation was objectively baseless.[11]

---

[10] This theory also fails for the reasons discussed above – *i.e.*, lack of a relevant geographic and product market, and lack of a dangerous probability that BuzzBallz will achieve monopoly power.

[11] To overcome *Noerr-Pennington* immunity, Patco must also plausibly allege that BuzzBallz's conduct was subjectively motivated by an intent to use the process of litigation, rather than its outcome, as an anticompetitive weapon. *PRE*, 508 U.S. at 60-61. Because objective baselessness

13

The alleged cease-and-desist letters are also immune from antitrust liability. Sending cease-and-desist letters "is a common, if not universal, feature of modern litigation." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 925, 936 (9th Cir. 2006) (affirming dismissal of claim premised on "tens of thousands of demand letters"); *see also Indus. Models, Inc. v. SNF, Inc.*, 716 F. App'x 949, 956 (Fed. Cir. 2017) (sending non-baseless cease-and-desist letters is "insufficient to support an antitrust claim"). Here, Patco alleges that BuzzBallz sent cease-and-desist letters to "Patco's manufacturing partners" mentioning that BuzzBallz has "multiple patents" and that Patco's products infringe "at least" one claim of Patent No. 11,932,441 ('441 Patent). Counterclaim ¶¶ 8, 18. But to be clear, Patco alleges only that the '904 Patent was procured by fraud, and the cease-and-desist letters *do not mention* that patent.[12] Patco does not allege that the '441 Patent referenced in the cease-and-desist letters is invalid or that it was fraudulently obtained. And Patco does not otherwise allege that it was objectively baseless for BuzzBallz to claim that Patco's products infringe the '441 Patent. Thus, based on Patco's current allegations, BuzzBallz's cease-and-desist letters are protected by *Noerr-Pennington* immunity, and they cannot support a claim for attempted monopolization.

### 4. Dismissal is with leave to amend

It is doubtful that Patco can allege facts to cure all the pleading deficiencies above. However, the Court grants leave to amend because this is the Court's first ruling on the legal sufficiency of this counterclaim. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (holding that the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))). Although the Court grants leave to amend, the Court will dismiss this counterclaim with prejudice if a third amended counterclaim fails to plausibly state a claim. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as*

---

is lacking here, the Court need not reach subjective motivation. *Id*. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.").

[12] Patco does not oppose the Court taking judicial notice of the cease-and-desist letters for purposes of this motion to dismiss. *See* Patco's Statement of Non-Opp.; Bloom Decl. Exs. 2-5 (cease-and-desist letters).

14

*amended* (Feb. 10, 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996))).

### C.   Cybersquatting (Counterclaim 5)

Patco asserts that BuzzBallz registered two website domain names similar to Patco's "Big Sipz" trademark to confuse and redirect Patco's customers to BuzzBallz's own website. To establish a cybersquatting claim under the ACPA, Patco must plausibly allege that "(1) [BuzzBallz] registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by [Patco]; and (3) [BuzzBallz] acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)(i)). The mark must be distinctive or famous at the time the defendant registered the domain name. 15 U.S.C. § 1125(d)(1)(A)(ii)(I), (II).

BuzzBallz argues that "Big Sipz" was not a "protectable or distinctive mark" when BuzzBallz registered the bigsipz.com and bigsipzcocktails.com domain names in December 2021 and March 2022, respectively. According to BuzzBallz, Patco had not used the Big Sipz mark in commerce at those times. Opp. at 21. This argument raises a premature factual dispute and asks the Court to make an improper inference against well-pleaded allegations in the counterclaims.

Patco alleges that it began to produce tequila in 2008 and entered the ready-to-drink cocktail market in 2012. Counterclaim ¶ 20. In 2021, Patco decided to expand its ready-to-drink products in the "small format (250 mL or less) market," naming its new line of ready-to-drink cocktails "Big Sipz." *Id*. ¶ 21. Patco chose the "Big Sipz" name "to emulate the spirit of the 1990s and capture a nostalgic look and feel for young adults in the millennial and Gen Z generations." *Id*. Patco applied for the "Big Sipz" trademark on December 20, 2021. *Id*. ¶ 22. Just three days later, on December 23, BuzzBallz registered the "bigsipz.com" domain name and "programmed the website to redirect visitors to BuzzBallz's own website." *Id*. In February 2022, Patco began marketing its early designs for the Big Sipz products to distribution partners. *Id*. ¶ 23.

1    Then, on March 29, 2022, BuzzBallz registered the bigsipzcocktails.com domain name and again
2    redirected visitors to BuzzBallz's own website. *Id*. ¶ 22. In November 2022, Patco launched the
3    Big Sipz products in select states. *Id*. ¶ 25.
4        Based on these allegations, it is plausible that Patco began to use the Big Sipz mark in
5    commerce as early as February 2022, before BuzzBallz registered the bigsipzcocktails.com
6    domain name.[13] The use-in-commerce inquiry is fact-intensive and requires the Court to consider
7    the totality of the circumstances. *Chance v. Pac-Tel Teletrac Inc*., 242 F.3d 1151, 1158-59 (9th
8    Cir. 2001). The totality of the putative mark owner's acts "prior to its first sale" can be sufficient
9    to establish use in commerce. *See id*. at 1158; *see also Rearden LLC v. Rearden Commerce, Inc*.,
10   683 F.3d 1190, 1205-06 (9th Cir. 2012). Here, Patco alleges that it marketed Big Sipz products to
11   distributors and retail partners beginning in February 2022 and continued to do so through its
12   launch of the product later that year in November 2022. *See* Counterclaim ¶ 25. At the pleading
13   stage, the Court cannot conclude that these activities, under the totality of the circumstances, are
14   insufficient to establish use of the mark in commerce.[14] Accordingly, BuzzBallz's motion to
15   dismiss due to lack of commercial use prior to the domain name registration is denied.[15]

16        **D.    Unfair Competition Law (Counterclaim 2)**
17        Patco also claims that BuzzBallz's conduct violates the UCL. The UCL prohibits
18   "unlawful," "unfair," and "fraudulent" business acts and practices. Cal. Bus. & Prof. Code
19   § 17200. Here, Patco alleges unlawful, unfair, and deceptive conduct by BuzzBallz.
20   Counterclaim ¶¶ 75-116.

---

[13] BuzzBallz argues that October 1, 2022, is the earliest possible use in commerce of the Big Sipz mark. Mot. at 21. But the cited document states that the mark was "first used in commerce *at least as early as*" October 1, 2022. Bloom Decl. Ex. 7 at 4, ECF No. 112-6 (emphasis added).

[14] BuzzBallz also argues that Patco cannot demonstrate harm resulting from the domain name registration. Mot. at 21-22. However, BuzzBallz does not cite any authority requiring Patco to allege or prove harm as an element of this counterclaim. *Cf. DSPT Int'l.*, 624 F.3d at 1218-19 (discussing elements). In any event, Patco plausibly alleges harm. Counterclaim ¶ 171 (alleging that Patco lost sales, profits, and market share due to the inability to advertise the products during the critical product-launch phase).

[15] The Court need not reach Patco's argument that the intent-to-use application it filed for the "Big Sipz" trademark established constructive use prior to BuzzBallz's registration of the first domain name on December 23, 2021. *See* Opp. at 20-22.

16

1         Patco cites BuzzBallz's conduct in capturing the bigsipz.com and bigsipzcocktails.com domain names in support of its UCL claim. *Id*. ¶¶ 105-06.  For the reasons discussed above, Patco plausibly alleges a violation of the ACPA, thus it also plausibly alleges a UCL "unlawful" prong claim.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999) (explaining that the UCL borrows violations from other laws).  Because Patco plausibly alleges at least one UCL violation, the Court need not reach whether Patco also states a UCL violation premised on "unfair" or "fraudulent" conduct.  Accordingly, BuzzBallz's motion to dismiss Counterclaim 2 is denied.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the motion is GRANTED without leave to amend as to Counterclaims 1 and 3 (Declaratory Judgment of Patent Invalidity and Inequitable Conduct).  The motion is GRANTED with leave to amend as to Counterclaim 4 (*Walker Process* Fraud and Attempted Monopolization).  The motion is DENIED as to Counterclaim 2 (UCL) and Counterclaim 5 (Cybersquatting).

Patco shall file amended counterclaims consistent with this Order within fourteen days. Upon filing the amended counterclaims, Patco shall also file a redlined version showing the changes made to the previously-filed counterclaims.

**IT IS SO ORDERED.**

Dated: July 22, 2025

Eumi K. Lee
United States District Judge