UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUZZBALLZ, LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>MPL BRANDS NV, INC.,<br><br>              Defendant. | Case No.  24-cv-04004-EKL<br><br>**ORDER DENYING SUMMARY JUDGMENT-RELATED *DAUBERT* MOTIONS**<br><br>Re: Dkt. Nos. 238, 243, 249, 253 |

Defendant MPL Brands NV, Inc. d/b/a Patco Brands ("Patco") has moved for summary judgment on the trade dress infringement and unfair competition claims asserted by Plaintiff BuzzBallz, LLC ("BuzzBallz").  This Order addresses a subset of issues raised in the parties' *Daubert* motions that are relevant to the summary judgment motion.  *See* ECF Nos. 302, 307.  The relevant *Daubert* motions seek to exclude:  (1) the functionality opinions offered by BuzzBallz's experts Arthur Shapiro and Glenn May; (2) the functionality and genericness opinions offered by Patco's expert Charles L. Mauro; and (3) the secondary meaning survey offered by BuzzBallz's expert David Franklyn.  *See* ECF Nos. 238, 243, 249, 253, 302, 307.  Having reviewed the parties' submissions and relevant authority, the Court finds these motions suitable for resolution without oral argument.  Civil L.R. 7-1(b).  The *Daubert* motions are DENIED in part for the following reasons.

### A.     Functionality and Genericness Opinions

The parties disclosed three experts to opine, in part, on whether BuzzBallz's asserted trade dress is functional, and therefore not protectable.  Consistent with the case schedule for expert discovery, BuzzBallz disclosed Shapiro, then Patco disclosed Mauro as a rebuttal expert on functionality and genericness, and finally BuzzBallz disclosed May as a reply expert to respond to

Mauro's functionality opinions, among others.  *See* Shapiro Report, ECF No. 250-9; Mauro Report, ECF No. 239-14; May Report, ECF No. 248-2.  Patco moves to exclude the functionality opinions offered by Shapiro and May, asserting that BuzzBallz failed to timely disclose the experts' theories of non-functionality during fact discovery.  Mot. to Exclude May at 6-7, ECF No. 249 ("May *Daubert*"); Mot. to Exclude Shapiro at 9-10, ECF No. 253 ("Shapiro *Daubert*").  BuzzBallz moves to exclude the opinions offered by Mauro, contending that they are inconsistent with the relevant legal standards for functionality and genericness.  Mot. to Exclude Mauro at 8-10, ECF No. 243 ("Mauro *Daubert*").  The Court addresses these arguments in turn.

### 1.    Shapiro and May

Federal Rule of Civil Procedure 26(a)(2) "requires litigants to disclose all expert witnesses 'at the times and in the sequence that the court orders.'"  *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021) (quoting *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011)).  Rule 26(e) provides that a party must supplement or correct its Rule 26(a) disclosures and discovery responses in "a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The party proffering an untimely expert has the burden to prove that the late disclosure was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001).

Rebuttal reports are "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in that party's expert disclosures.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  "The test of whether an expert's opinion constitutes rebuttal or a new opinion, however, is not whether a rebuttal expert employs new testing or methodologies but instead, whether a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut." *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018)

(citation modified).  There is no absolute requirement that the party with the burden of proof on an issue must disclose affirmative expert testimony on that issue.  *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment (recognizing that "*in most cases* the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue" (emphasis added)).

Here, Patco argues that Shapiro and May's opinions regarding non-functionality should be excluded because BuzzBallz failed to disclose their non-functionality theories during fact discovery in response to an interrogatory.  May *Daubert* at 6-7; Shapiro *Daubert* at 9.  Patco also contends that May's opinions should be excluded because they were disclosed for the first time in a reply report.  May *Daubert* at 6-7.  These arguments are not persuasive.

First, BuzzBallz's response to the interrogatory was adequate.  The interrogatory requested that BuzzBallz "[s]tate the complete factual and legal basis for [its] contention that [its] unregistered [a]sserted [t]rade [d]ress is protectable."  ECF No. 249-5 at 9.  BuzzBallz's response included a short narrative identifying BuzzBallz's contentions, including its assertion that the trade dress is non-functional, and referred Patco to more than 20 documents "containing information concerning the protectability" of its trade dress, as permitted by Federal Rule of Civil Procedure 33(d).  ECF No. 249-5 at 9-11.  BuzzBallz also responded that it would "submit further evidence responsive to this interrogatory when expert reports are due."  *Id.* at 11.

BuzzBallz's response provided the factual and legal bases for its contention that the asserted trade dress is protectable.  BuzzBallz was not required to disclose the details of its forthcoming expert reports in response to the interrogatory before the reports were due under the case schedule.  In addition, Patco deposed both Shapiro and May after they disclosed their non-functionality opinions.  *See* ECF Nos. 272-6, 274-2; *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 951 (N.D. Cal. 2015) (declining to exclude expert where party moving to exclude "had the opportunity to depose him").  Accordingly, the Court declines to exclude Shapiro and May's non-functionality opinions due to BuzzBallz's interrogatory response.[1]

---

[1] The cases that Patco cites are distinguishable.  In *Benefit Cosmetics LLC v. e.l.f. Cosmetics, Inc.*, the court did not exclude the expert's opinions regarding functionality and instead permitted

United States District Court
Northern District of California

Second, it was not improper for BuzzBallz to disclose May's non-functionality opinions in a reply report because the opinions fall squarely within the scope of proper rebuttal. May directly tied his analysis to Mauro's report and the evidence upon which Mauro relied. *See, e.g.*, May Report ¶¶ 55-57, 63, 67-71. Patco identifies only one "theory" of non-functionality in May's report that it claims should have been disclosed earlier in response to the interrogatory. May *Daubert* at 7. But the relevant example is a direct response to Mauro's report, not a new theory. *Compare* Mauro Report ¶ 69 (opining that the shape of a BuzzBallz container is functional for purposes of "distribution and shipping logistics" and "how the cans stack"), *with* May Report ¶¶ 52-54 (responding that the rounded container shape has disadvantages with respect to distribution and stacking that render it non-functional). Because May does not attempt "to put forward new theories outside the scope of the [functionality opinions he] claims to rebut," the Court declines to exclude his functionality opinions. *Huawei Techs.*, 340 F. Supp. 3d at 995.

In sum, because BuzzBallz satisfied its discovery obligations and timely disclosed the opinions of Shapiro and May, the Court denies Patco's motions to exclude these opinions.

### 2. Mauro

BuzzBallz argues that Mauro's opinions "should be excluded because he relies on an incorrect standard for functionality and genericness." Mauro *Daubert* at 9-10. According to BuzzBallz, Mauro incorrectly analyzed the functionality and genericness of the individual elements comprising its asserted trade dress, instead of analyzing the trade dress as a whole. *Id.* BuzzBallz also contends that Mauro's functionality and genericness opinions are unsupported and, thus, should be excluded. *Id.* The Court declines to exclude Mauro's opinions on either basis.

First, BuzzBallz is correct that "the proper inquiry" with respect to trade dress based on a product's "overall appearance" "is not whether individual features of a product are functional or

---

additional discovery. No. 23-cv-00861, 2024 WL 3558848, at *9 (N.D. Cal. July 25, 2024). But here, Patco has not plausibly identified any additional discovery it needs on functionality. Rather, Patco submitted its own expert report on functionality and deposed May before summary judgment briefing commenced. In *Asia Vital Components Co. v. Asetek Danmark A/*S, the court found that an expert's opinion should have been disclosed in response to an interrogatory due to rules that are specific to patent cases, which are not applicable in this trade dress infringement case. 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019).

United States District Court
Northern District of California

nondistinctive but whether the whole collection of features taken together are functional or nondistinctive." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1050 (9th Cir. 1998) (citation omitted). However, in *conducting* that inquiry, an expert may examine the individual features of the trade dress. "Examining a product 'as a whole' does not require any strained effort to look at its gestalt without seeing its individual features." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 866 (9th Cir. 2020). Indeed, "when the claimed trade dress is an 'overall appearance'" – as it is here – it is important to consider whether the trade dress is merely an "assemblage of functional parts." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1213 (9th Cir. 2023) (citing *Herman Miller*, 963 F.3d at 866). Therefore, it is appropriate for an expert witness to examine the individual features of an asserted trade dress *in aid of* analyzing whether the "overall appearance" is functional or nondistinctive.[2]

Additionally, Mauro did not exclusively focus on whether individual features of BuzzBallz's asserted trade dress are functional or generic. Mauro expressly opined that the "trade dress, *taken as a whole*, is functional." Mauro Report ¶ 68 (emphasis added). He then analyzed each element of the trade dress and responded to points made in Shapiro's report regarding functionality, before concluding that the "*combined overall features* are functional because they do impact the quality and cost of the product." *Id.* ¶¶ 69-83 (emphasis added). Therefore, Mauro adequately addressed functionality in accordance with the governing legal standard. With respect to genericness, although Mauro did not expressly conclude that the overall appearance of the trade dress is generic, he opined that it "consists of a number of generic elements." *Id.* ¶ 87. This testimony is still relevant because an explanation of why certain features of BuzzBallz's trade dress are generic may factor into whether the trade dress is generic overall. *See Orgain*, 2022 WL 2189648, at *3.

---

[2] *See Orgain, Inc. v. N. Innovations Holding Corp.*, No. 18-cv-01253-JLS-ADS, 2022 WL 2189648, at *3 (C.D. Cal. Jan. 28, 2022) ("Although ultimately the jury must consider the trade dress as a whole, testimony regarding the various elements of [the] trade dress may be helpful in making that determination and is not directly contrary to the applicable trade dress law."); *see also Vans, Inc. v. Walmart, Inc.*, No. SA CV 21-01876-DOC-KESx, 2023 WL 6927344, at *5 (C.D. Cal. Oct. 11, 2023) ("Even assuming that [defendants' expert] opines only on the functionality of the individual elements of the trade dress, not the trade dress as a whole, the testimony is still relevant.").

Second, the Court disagrees that Mauro's analysis is so conclusory that it is inadmissible. Mauro explains that the trade dress is functional and provides a detailed analysis of various features. In doing so, he also reaches conclusions about the genericness of some of the elements of BuzzBallz's trade dress and sufficiently explains his reasoning. *See* Mauro Report ¶¶ 66-67, 74-75, 77, 87. BuzzBallz can probe and challenge the sufficiency of Mauro's analysis on cross examination if he testifies. Accordingly, the Court declines to exclude Mauro's opinions on functionality and genericness.

### B. Secondary Meaning Survey

Under Federal Rule of Evidence 702, expert testimony must be both relevant and reliable to be admissible. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-592 (1993). Courts should admit survey evidence "as long as it is conducted according to accepted principles and is relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (citation modified) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)). "Technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Id.* (citation modified). In sum, "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).

Patco moves to exclude Franklyn's secondary meaning survey based on multiple alleged flaws. Mot. to Exclude Franklyn at 2-6, ECF No. 238 ("Franklyn *Daubert*"). First, Patco argues that Franklyn used an improper screening question to exclude potential buyers from his survey. *Id.* at 2-4 (arguing that the appropriate universe of respondents would include actual and potential buyers). Second, Patco asserts that Franklyn used an improper test image of the BuzzBallz trade dress to gauge secondary meaning. Third, Patco argues that, because certain features of the trade dress are covered by a BuzzBallz patent, Franklyn should have considered whether the secondary meaning measured by the survey was in part due to the patent coverage. *Id.* at 5-6. Finally, Patco contends that the survey is unreliable because Franklyn's control "is drastically different than the

BuzzBallz trade dress being tested." *Id*. at 6.  The Court finds that these challenges relate to "follow-on issues of methodology" and "survey design." *Clicks Billiards*, 251 F.3d at 1263.  As a result, they relate to the "weight of the evidence, not its admissibility." *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275-76 (9th Cir. 2024).

First, to screen survey respondents, Franklyn asked:  "Have you ever seen a pre-mixed alcohol cocktail that looks like this?" and displayed a test image of a BuzzBallz product with the BuzzBallz name and other text removed.  Franklyn Report at 28-29, ECF No. 238-3.  Respondents who answered "no" were excluded from the survey.  But contrary to Patco's argument, the screening question did not limit the respondents to existing buyers of BuzzBallz products.  Respondents may have seen BuzzBallz products before without purchasing them – *e.g.*, when shopping for other ready-to-drink cocktails.  Thus, potential buyers of BuzzBallz products were not necessarily excluded from the respondent population.  Additionally, it is not clearly improper for a survey to focus on the trade dress owner's existing customers.  *See Clicks Billiards*, 251 F.3d at 1262 (finding that a survey of the plaintiff's "patrons" should not have been excluded).  Finally, "[t]he selection of an inappropriate universe generally affects the weight of the resulting survey data, not its admissibility." *Simpson Strong-Tie Co. v. MiTek Inc.*, No. 20-cv-06957-VKD, 2023 WL 137478, at *3 (N.D. Cal. Jan. 9, 2023) (quoting 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:162 (5th ed. 2018)).  "Even if a survey does not select the optimal universe, the results are often still probative of the proposition the survey was intended to test." *Id.* (citation omitted).  Thus, BuzzBallz's critique of the screening question goes to the weight of Franklyn's findings, not their admissibility.

Second, Patco's critiques of Franklyn's test image are not grounds for exclusion.  To test whether consumers attribute secondary meaning to the asserted trade dress, Franklyn used a test image of an actual BuzzBallz product, but removed the text associated with the BuzzBallz logo and the flavor of the cocktail.  Patco suggests that it was improper to remove the BuzzBallz logo, but this was a reasonable survey design choice.  *See P&P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 958 (9th Cir. 2022).  Removing an obvious source identifier like the BuzzBallz logo helps to analyze whether the overall appearance of the asserted trade dress has acquired secondary

7

meaning.  Patco also argues that the test image improperly included features that are *not* elements of the asserted trade dress – for example, the "pop top lid" of the BuzzBallz container.  But the lid is part of the actual BuzzBallz packaging, and Patco cites no authority requiring an expert to modify a test image of an actual product under these circumstances.  These critiques are better suited for cross examination.

Third, Patco does not cite any Ninth Circuit authority suggesting that a secondary meaning survey should be excluded if it fails to test or account for whether secondary meaning derives in part from patented elements of a product design.  Patco relies on *Thomas & Betts Corp. v. Panduit Corp.*, where the Seventh Circuit held that "when a trade dress sought to be protected was *formerly contained* in a patent, evidence establishing secondary meaning must also show that any connection between the trade dress of the product and its producer does not primarily stem from the expired patent."  138 F.3d 277, 294 (7th Cir. 1998) (emphasis added).  The concern in *Thomas & Betts* was that trade dress may improperly extend a monopoly on features covered by *expired patents*.  But, as Patco notes, BuzzBallz's patents issued in 2020 and later, and they have not expired, so the policy concern in *Thomes & Betts* is not triggered here.  Franklyn *Daubert* at 6 (citation omitted).  Additionally, BuzzBallz marketed its products well before the patents issued, and Patco offers no reason to believe that the secondary meaning measured by Franklyn's survey derives from BuzzBallz's patents, as opposed to its marketing efforts.

Finally, as to the control image, whether the survey results were unreliable based on the use of a control product that is significantly different from the trade dress at issue goes to the weight, not the admissibility, of the findings.  *BillFloat*, 105 F.4th at 1276 (explaining that a critique of an expert's choice of "control stimuli" goes "to the weight of the evidence, not its admissibility"); *see also Clicks Billiards*, 251 F.3d at 1263.

* * *

Because all of Patco's arguments in support of excluding Franklyn's secondary meaning survey go to the weight, not the admissibility, of his findings, Patco's motion to exclude the survey is denied.

**C.    Conclusion**

For the foregoing reasons, the Court DENIES the parties' *Daubert* motions with respect to the subset of issues specifically addressed in this Order.

**IT IS SO ORDERED.**

Dated:  May 18, 2026

Eumi K. Lee
United States District Judge

9